# AFFIDAVIT

## I. Introduction

1. I, Scott Murray, having been duly sworn, depose and state I am a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been so employed for approximately 17 years. Prior to working for the ATF, I worked as a police officer for the Phoenix, Arizona Police Department for nearly five years. I am familiar with federal laws relating to firearms, narcotics, and the interference of commerce by robbery. I have been trained in the investigation of said offenses, and have participated in related investigations.

2. I submit this affidavit in support of an application for the issuance of a warrant to search a black colored Samsung, model SM-S727VL, cellular telephone with IMEI number 355890097161926 (the "Target Device"). The Target Device was seized from Devin T. Daly during a search incident to his arrest. As described below, there is cause to believe that the Target Device contains evidence of federal offenses, specifically Interference With Commerce by Means of Threatened Force During the Commission of a Robbery, in violation of 18 U.S.C. § 1951(a); Felon in Possession of a Firearm, 18 U.S.C. § 922(g)(1); and Unlawful Drug User in Possession of a Firearm, 18 U.S.C. § 922(g)(3). I have reviewed the Target Device, which is currently in the custody of Saint Albans Police Department. A complete description of the Target Device is set forth in attached Attachment A.

3. The information contained in this affidavit is based upon my training, experience, and investigation, as well as information conveyed to me by other law enforcement officers. The following is either known to me personally or has been related to me by persons having direct knowledge of the events described below, including other law enforcement officers involved in this investigation. Since this affidavit is being submitted for the limited purpose of establishing

probable cause, I have not included each and every fact known to me concerning this investigation.

## II. Probable Cause

4. Probable cause exists to believe that Devin T. Daly utilized the Target Device as it was in his possession and turned on when police arrested him on April 17, 2019 in St. Albans, Vermont. The Target Device was located in his rear left pants pocket during a search incident to his arrest. I met with Saint Albans Police and reviewed the Target Device on June 5, 2019 to confirm the manufacturer, model and IMEI number. Presently it is in the custody of the Saint Albans Police Department.

5. On April 16, 2019, at approximately 7:52 P.M. a white male subject entered the Jolley Convenience Store at 277 North Main Street in Saint Albans, Vermont, with what appears to be a black semi-automatic pistol in his hand. The subject wore a dark hooded sweatshirt with the hood over his head, and light colored jeans with a hole in the right front quadriceps area where the inner white pocket could be seen sticking out of the hole in the jeans. The subject held a white cloth over his nose and mouth. The cashier initially began fleeing before the suspect came around the corner, pointed the handgun at him, and ordered him to surrender the money in the register. The suspect obtained $140 in U.S. currency and fled the store on foot. An image of the suspect approaching the Jolley Convenience Store cashier on the evening of April 16, 2019, from the victim store's video camera, is set forth below.



6. The following day, on April 17, 2019, Saint Albans Police Detectives Trevor Sargent and Keith Coty were on patrol in the area of South Main Street in Saint Albans, Vermont when they spotted a subject, later identified as Devin T. Daly, matching the description of the suspect in the armed robbery the prior evening. The two detectives observed that Daly was wearing what appeared to be the same light colored jeans with a large hole in the right quadriceps area exposing the white colored pocket underneath. In addition, they observed that he was wearing what appeared to be the same dark gray colored hooded sweatshirt seen on the video of the robbery, underneath a brown coat. Below is a photograph of Daly when he was contacted by police (left) wearing the gray hooded sweatshirt and later standing in the pants (right) he was wearing. Underneath the hooded sweatshirt Daly was wearing a flannel patterned long sleeve shirt.



7. When the two detectives made contact with Daly he immediately told acquaintances with whom he was walking to "tell Amber," apparently anticipating that he might be arrested. The two detectives asked Daly if he had any weapons or firearms on him. Daly paused, "cocked his head to the side, and ran his fingers through his hair," then advised there was a handgun in the backpack he had just removed from his back. Daly refused to speak further in detail. Detectives placed Daly in custody related to the armed robbery offense and subsequently applied for a state-issued search warrant to search the backpack. Searching Daly incident to arrest, detectives located the Target Device, a black colored Samsung cellular telephone in his left rear pants pocket. Detectives also located $21 in U.S. currency from Daly's pocket and a hypodermic needle, apparently associated with heroin use. After receiving the search warrant to search the backpack, detectives located in it a loaded Hi-Point, model C9, 9mm semi-automatic pistol, serial # P1236694. Detectives also located a white t-shirt, consistent with the white cloth material that the armed robber the prior evening held over his nose and mouth. Daly was held at

the Northwest State Correctional Facility on violations of his parole related to a prior felony conviction for Aggravated Assault.

8. On May 30, 2019 I met with Daly at the Northwest State Correctional Facility regarding his possession of a firearm as a previously convicted felon. Daly stated that he has been attending a drug treatment program in the jail facility. He stated that he had a felony conviction for Aggravated Assault based on an altercation with another subject involving a knife. When I asked him Daly if he had injured someone with the knife, or threatened someone with the knife, Daly claimed he did not and stated the knife "wasn't even used, it was just there." Daly stated that he removed the knife from the subject he had confronted. He stated that he had some drug history but was hesitant to speak about his heroin or other drug use in detail. I advised Daly that I wanted to speak to him about his intentions possessing a firearm as a convicted felon, and if he intended to hurt someone with the firearm. Daly stated he did not have any "bad intentions" with the firearm but declined to speak further about his involvement in criminal activity.

9. I later reviewed the police incident report related to Daly's felony conviction for Aggravated Assault. The report described Daly assaulting a male subject in Rutland, Vermont. When a female witness told Daly she was going to contact police, Daly allegedly removed the knife from the male subject, and told her that if she followed him to tell police where he was going, he would "fucking kill" her. This set of facts was in contrast with what Daly stated to me about the knife passively being present during an altercation.

10. On June 4, 2019, I interviewed Kris Embury, the store manager of the Jolley Convenience Store at 277 North Main Street in Saint Albans, Vermont. Embury stated the store employee who was the victim of the armed robbery has had a very hard time emotionally with the robbery. The employee was out of work for about a month following the robbery before

5

coming back and has continuing concerns with customers entering the store and their intentions. Embury stated the store operations were disrupted and impacted by the robbery; it shut down for the rest of the day. Embury stated the store utilizes and sells a variety of goods and products received from out of state vendors. He stated that the store utilizes fresh food vendors from the State of New York and prepackaged food products from a vendor in the State of Maine. This is in addition to a variety of other products such as tobacco, alcohol and gasoline transported into Vermont from other states and received by the store from local distributors. I was also advised there was another armed robbery of a Jolley Convenience Store located at 711 Fairfax Road in Saint Albans, Vermont on April 2, 2019 by a subject with a similar description where no arrest was made as of yet.

    11.    On June 5, 2019 I met with Saint Albans Police Detectives Sargent, Coty, and George Rodriguez regarding the investigation into Daly and the other store robbery. Detectives advised that Daly was a suspect in the April 2, 2019 robbery of the other St. Albans Jolley Convenience Store. The suspect in that robbery had a similar physical appearance and a dark colored hooded sweatshirt. Detectives also noted that the suspect in that robbery had flannel patterned shirt partially seen underneath the hooded sweatshirt consistent with the one worn by Daly when arrested. Detectives further advised that the April 2 robber similarly paced on foot just outside the store as did the April 16 robber before entering the store. Det. Rodriguez advised that in reviewing the video it appeared the suspect, while pacing outside, was utilizing a cellular telephone. Det. Rodriguez advised that he observed a faint light in the area where the suspect was in the distance that appeared consistent with a cellular phone display light. Detectives advised that the April 2 robber had a silver colored handgun dissimilar to the black pistol used in April 16 robbery, and that silver handgun has not been recovered. Detectives provided me with a copy of the surveillance video from the April 16, 2019 robbery for my review. I looked over the

recovered cellular telephone from Daly and the recovered Hi-Point handgun.

12. I have received specialized training as to the identification of firearms and their manufacturers. Upon reviewing the video from the April 16, 2019 robbery, I observed that the semi-automatic pistol appeared to be the same handgun as the Hi-Point semi-automatic pistol recovered from Daly on April 17, 2019. The black colored Hi-Point pistol recovered from Daly had a heavy rounded top slide with bright white manufacture markings on the front left side, reading "Hi-Point Firearms, Model C9, Beemiller INC, Mansfield, OH, 9mm Luger." It is relatively uncommon in handguns to see bright white manufacture markings imprinted prominently on the black metal slide as opposed to subdued black or dark imprinting displayed on black metal. In reviewing the store video, I observed that the black pistol held by the April 16 robber pointing it over the counter at the store cashier had similar unique bright white colored markings, consistent with the Hi-Point pistol possessed by Daly. The physical description and height of the suspect also appeared consistent with Daly, who is a white male, about 5'11" tall, and has a thin to medium build. Below is a photograph comparing the semi-automatic pistol held in the robbery (left) and the semi-automatic pistol recovered from Daly the following day (right).



13. Upon conducting a criminal history inquiry, I observed that Daly is a previously convicted felon based upon an Aggravated Assault felony conviction he received on February

22, 2012. The criminal history identifies DALY by his full name, date of birth, physical description and state identification number. I also reviewed the Rutland, Vermont District Court docket sheet detailing the felony conviction information of Daly in state docket 1429-10-10 Rdcr. The docket sheet identifies DALY by his full name and date of birth.

14. I have received specialized training with ATF as an interstate nexus expert in regards to the identification of firearms and the determination of firearm manufacturing locations. I determined based upon my training and experience, that the Hi-Point pistol found in possession of Daly was manufactured outside the State of Vermont and therefore traveled in or affected interstate commerce before DALY possessed it.

15. I have found, based on my training and experience, that individuals who illegally steal items of value, or currency, or commit crimes such as armed robbery often do so in order to further their own drug use. These individuals often immediately take the currency or item of value and contact their drug source in order to obtain illegal drugs. Based on my training and experience, these individuals typically utilize cellular telephones in order to contact their supplier to obtain illegal drugs via phone calls, text messages, or other messaging services. Individuals will often message acquaintances after obtaining illegal drugs simply to communicate about what the individual received or to initiate contact with those acquaintances in order to use the drugs together. Also, photographs of drugs and drug paraphernalia, and/or firearms are often maintained by armed drug users with cellular phones.

16. During the course of my law enforcement career, I have written and/or participated in the execution of numerous federal and state search warrants for violations of firearm and narcotics laws. Based on my training and experience, I have found that individuals who illegally possess or deal firearms and ammunition will often receive, take, and maintain photographs of these items with cellular phones or other electronic devices with a camera. These

photographs are utilized for a multitude of purposes, which include, but are not limited to: receiving photographs of firearms from potential sellers of firearms; sharing the photographs with potential buyers of firearms in order to solicit their interest in purchasing these items; posting the photographs on social media sites to display the possession of these items to friends and other associates; and sharing of the photographs with enemies for intimidation purposes. I have learned through my training and experience, that those individuals who maintain photographs of firearms as indicated above often do not delete them for some time, even after the firearms are purchased or sold. I have learned through my training and experience those individuals often store these same digital photographs and information on additional phones and often transfer the data to future or additional phones that they possess. I have learned through my training and experience that photos and messages deleted on the phone can still often be recovered from the memory of the cellular phone or other device.

17. I have also found, based on my training and experience, that individuals who illegally purchase, possess or deal firearms and ammunition often use their cellular phones in order to communicate with sources of supply, potential buyers or other individuals potentially involved in unlawful business transactions. These communications often occur in a variety of ways, which include, but are not limited to, e-mail, phone calls and voice messages, and text messaging and messaging via social media applications such as "SnapChat" and "Facebook." Logs and contents of these communications often help identify co-conspirators, reveal the storage location of firearms, ammunition, and narcotics and identify previous transactions.

18. Based on my training, experience, and information provided by other law enforcement officers, I know that many smartphones can now function essentially as small computers. The Target Device is a type of smartphone. Smartphones have capabilities that include serving as a wireless telephone, digital camera, portable media player, GPS navigation

device, sending and receiving text messages and e-mails, and storing a vast range and amount of electronic data. Examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

19. From my training, experience, and information provided to me by other agents, I am aware that individuals commonly store records of the type described in Attachment B in smartphones.

20. Based on my knowledge, training, experience, and information provided to me by other agents, I know that data can often be recovered months or even years after it has been written, downloaded, saved, deleted, or viewed locally or over the Internet. This is true because:

   a. Electronic files that have been downloaded to a storage medium can be stored for years at little or no cost. Furthermore, when users replace their electronic equipment, they can easily transfer the data from their old device to a new one.

   b. Even after files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a device, the data contained in the file often does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data, which might not occur for long periods of time. In addition, the device's operating system may also keep a record of deleted data in a 'swap' or 'recovery' file.

   c. Wholly apart from user-generated files, electronic storage media often contains electronic evidence of how the device has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory 'swap' or paging files. It is technically possible to delete this information, but users typically do not erase or delete this evidence because special software is typically required for that task.

   d. Similarly, files that have been viewed over the Internet are sometimes automatically downloaded into a temporary Internet directory or 'cache.' The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are overwritten only as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

21. Based on my training and experience, I know that it is a violation of 18 U.S.C. §1951(a) to interfere with commerce by means of threatened force during the commission of a robbery.

22. Based on my training and experience, I know that it is a violation of 18 U.S.C. §922(g)(1), for any person who has been convicted of a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition, or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

23. Based on my training and experience, I know that it is a violation of 18 U.S.C. §922(g)(3), for any person who is an unlawful user of a controlled substance to possess in or affecting commerce, any firearm or ammunition, or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

24. In searching the Target Device investigators would look for evidence related to the following:

    a. The unknown source from whom Daly acquired the recovered firearm (and possibly the April 2 firearm).

    b. Daly's use and possession of controlled substances, including those associated with the hypodermic needle found in his pocket.

    c. The location of the Target Device at the time of the two armed robberies.

    d. Whether Daly used the Target Device immediately following the armed robberies to contact individuals about acquiring controlled substances, or otherwise indicating that he had money and/or engaged in the robberies.

    e. Whether the Target Device was used prior to the robberies to research the two victim Jolley Convenience Stores.

f.  Evidence stored on the Target Device such as photographs, messages or location history related to Daly's possession of the recovered handgun and another handgun not yet recovered by law enforcement.

25. As discussed above, I submit that there is probable cause to believe that evidence of the three offenses referenced in paragraph 2 above, set forth in Attachment B, will be located in the Target Device, described in Attachment A.

26. Because the Target Device is in law enforcement custody, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Dated at Burlington, in the District of Vermont, this 14TH day of June, 2019.

Special Agent Scott Murray
Bureau of Alcohol, Tobacco, Firearms & Explosives

Sworn to and subscribed before me this 14th day of June, 2019.

Hon. JOHN M. CONROY
United States Magistrate Judge